```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

UNITED STATES OF AMERICA,

                        Plaintiff,

        -against-                              12 Cr. 844 (RWS)

                                               SENTENCING
ALFREDO VAZQUEZ ESPARRA,                       OPINION

                        Defendant.

------------------------------------------X
```

**Sweet, D.J.**

On April 22, 2014, Alfredo Vazquez Esparra ("Esparra" or "Defendant") pled guilty to conspiracy to distribute and possess with intent to distribute 5 kilograms and more of cocaine.

For the reasons set forth below, Esparra will be sentenced to 188 months' imprisonment followed by five years' supervised release, subject to the scheduled sentencing hearing on October 28, 2014. Defendant is also required to pay a special assessment of $100.

1

**Prior Proceedings**

Defendant was named in a one-count indictment (the "Indictment") filed in the Southern District of New York on December 18, 2012. The sole count ("Count 1") of the indictment charges that from in or about 2011 through in or about November 2012, the Defendant, and others known and unknown, conspired and possessed with intent to distribute 5 kilograms and more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

On April 22, 2014, Esparra appeared before the Court and pled guilty to conspiracy to distribute and possess with intent to distribute 5 kilograms and more of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A). In accordance with a Pimentel letter, the position of the United States Attorney's Office is as follows:

>    (a)   Offense Level
>
>       (i)    The November 1, 2013 Guidelines manual applies to the offense conduct.
>
>       (ii)   The sentencing guideline applicable to the offense charged in Count 1 of the Indictment is U.S.S.G. § 2D1.1.
>
>       (iii)  Pursuant to U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(1), because the Defendant's offense

2

>    involved more than 150 kilograms of cocaine, the
>    base offense level is 38.
>
> (iv) Assuming the defendant clearly demonstrates
>    acceptance of responsibility, to the satisfaction
>    of the Government, through his allocution and
>    subsequent conduct prior to the imposition of
>    sentence, a two-level reduction will be
>    warranted, pursuant to U.S.S.G. § 3E1.1(a).

In accordance with the above, the applicable Guidelines offense level is 36.

(b) Criminal History Category

Based upon the information now available to the U.S. Attorney's Office (including representations by the defense), the defendant has zero criminal history points.

In accordance with the above, the defendant's Criminal History Category is I.

(c) Sentencing Range

Based upon the calculations set forth above, the Defendant's stipulated Guidelines range is 188 to 235 months' imprisonment, with a mandatory minimum term of imprisonment, with a mandatory minimum term of imprisonment of 120 months. In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 36 the applicable fine range is $20,000 to $10,000.

Defendant is scheduled to be sentenced on October 28, 2014.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second

3

Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed —

   (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B)  to afford adequate deterrence to criminal conduct;

   (C)  to protect the public from further crimes of the defendant; and

   (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for —

   (A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5)  any pertinent policy statement . . . [issued by the Sentencing Commission];

(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

4

    (7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not.  See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Defendant's personal and family history.

**The Offense Conduct**

Between approximately October of 2011 and August 1, 2012, Esparra, Eduardo Andino ("Andino"), Omar Aponte ("Aponte"), Wilfredo Aquino ("Aquino"), Julio Cesar Cruz-Cordero ("Cruz-Cordero"), Alfonso Castillo ("Castillo"), Antonio Gabriel Jimenez Baez ("Baez"), Ricardo Javier Martino-Serrano ("Martino-Serrano"), Nelson Gustavo Colon-Torrez ("Colon-Torrez"), Eric Fernandez ("Fernandez"), and Pablo Ventura-Nieves ("Ventura-Nieves") conspired to transport approximately 2,000 kilograms of

5

cocaine from Puerto Rico to New Jersey, for ultimate distribution in the Southern District of New York and other locations.

Martino-Serrano obtained the cocaine from various sources in Puerto Rico who were looking to ship cocaine to the New York area. Colon-Torrez was responsible for organizing the shipping logistics. He hired several individuals, including Ventura-Nieves, Aponte, Andino, and others to assist in packaging the cocaine in Puerto Rico and delivering it in New York.

Colon-Torrez and Martino-Serrano arranged for the cocaine to be brought to Andino's house in Puerto Rico. Once there, Andino and Aponte would construct hollowed out sets of bamboo flooring; insert the kilograms of cocaine into the flooring; and put the flooring back in the boxes it had come in. Multiple boxes of flooring would then be stacked onto pallets to be shipped north.

Colon-Torrez delegated the details of the shipping to Ventura-Nieves, who — with at least one other uncharged co-conspirator — arranged for the cocaine to be shipped from Puerto Rico to New Jersey by using a shipping company (the "Shipping

Company") owned by Gloria Rodriguez ("Rodriguez"). Rodriguez created false documentation using the Shipping Company's name, including fake invoices and sham bills of lading, to ship the merchandise on the false premise that the (cocaine-laden) wood pallets were being sold by a flooring company in Puerto Rico to a general contractor in New York or New Jersey. Esparra had a trucking company and worked with Ventura-Nieves in transporting the flooring.

On various occasions in 2011 and 2012, Ventura-Nieves brought the wood flooring to Andino's house, where the drugs would be loaded into the flooring. When the cocaine was loaded, Ventura-Nieves retrieved the pallets of wood flooring from Andino's house and brought it to the Shipping Company's facilities in Puerto Rico.

Ventura-Nieves rented a warehouse (the "Warehouse") in Bayonne, New Jersey, to be used to break open the pallets of wood flooring once they had arrived from Puerto Rico. Ventura-Nieves also rented an apartment above the warehouse for him, Andino, Aponte, and others could stay in New Jersey.

On various occasions in 2011 and 2012, Ventura-Nieves and Esparra picked the wood pallets up at the Shipping Company's

facilities in New Jersey, and brought the pallets back to staging locations, including the Warehouse. Esparra typically signed to pick up the cocaine-filled wood. Once at the Warehouse, Andino and Aponte would remove the cocaine from the flooring, while Ventura-Nieves and Esparra would either reconstruct the flooring or destroy the flooring, depending on whether the group had decided to re-use the flooring for a future venture.

Andino and Aponte then delivered the cocaine to various individuals. These individuals' contact information had been provided to Colon-Torrez and Serrano in Puerto Rico by the owners of the drugs, and Colon-Torrez and Serrano in turn provided the contact information to Andino and Aponte. Typically, Andino and Aponte would meet the relevant individual in a public parking lot; take that individual's car back to the Warehouse and load it with boxes of cocaine; and return the car to the individual in the parking lot.

Castillo and Fernandez were narcotics traffickers and partners who sent cocaine from Puerto Rico to New Jersey using the above-described method. Fernandez made arrangements with Serrano to have the cocaine delivered from Puerto Rico to New York. Typically, Fernandez and Castillo transported between 10

and 100 kilograms per shipment.  In addition, Fernandez helped Serrano in Puerto Rico to pick up and deliver drugs to Colon-Torrez for shipment to the New York/New Jersey area.

Separately, working with Castillo, Fernandez sent to kilograms of cocaine in the mail to Jimenez-Baez.

Jimenez-Baez also arranged with Castillo to purchase 10 kilograms of cocaine from sources in the Caribbean, and obtained that cocaine in Miami, Florida, in October 2012.

Aquino was employed by Castillo as a courier and was sent to New Jersey on multiple occasions to pick up Castillo's cocaine from Andino and Aponte.

On August 1, 2012, Aquino traveled from the Southern District of New York to New Jersey to pick up 28 kilograms of cocaine from Andino and Aponte.  They met in a Burger King parking lot in Bayonne, and Andino and Aponte then brought Aquino's car back to the Warehouse to load it with drugs.  They returned the drug-filled car to Aquino.  Aquino's car was then pulled over by law enforcement, and the 28 kilograms were seized.  Shortly thereafter, Andino and Aponte, driving a Cadillac Escalade and a minivan, respectively, were pulled over.

Approximately 20 additional kilograms of cocaine were seized from the Escalade. The Escalade belonged to another customer, and the seized drugs had just been loaded into it at the Warehouse.

Agents obtained consent from Andino to search the Warehouse, where they seized approximately 300 kilograms of cocaine as well as many boxes of both intact and hollowed-out bamboo flooring. In October 2012, the DEA intercepted a package sent by Fernandez to Castillo containing 2 kilograms of cocaine.

For his role in the offense, Esparra is held accountable for more than 150 kilograms of cocaine.

**The Relevant Statutory Provisions**

The maximum term of imprisonment for Count 1 is life imprisonment. If a term of imprisonment is imposed, the Court is required to impose a term of at least 5 years' supervised release, pursuant to 21 U.S.C. §§ 841(b)(1)(A) & 846. Defendant is not eligible for probation because the instant offense is a Class A Felony. 18 U.S.C. § 3561(a)(1); U.S.S.G. § 5B1.1.(b)(1).

10

The maximum fine is $10,000,000, pursuant to 21 U.S.C. § 841(b)(1)(A). A special assessment of $100 is mandatory pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2013 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a).

The guideline for 21 U.S.C. § 841(b)(1)(A) is found in U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(1), pursuant to which Count 1 has a base offense level of 38.

The Defendant has assisted authorities in the investigation or prosecution of the Defendant's own misconduct by notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by two levels. U.S.S.G. § 3E1.1(a).

The Defendant has one adult conviction.[1] On September 19, 2009, the Defendant was sentenced to $100 fine and

---

[1] While Defendant had engaged in other criminal conduct, such other conduct, which was listed in the PSR, was dismissed and consequently does not enter into the calculation of Esparra's criminal history category.

$600 restitution for Battery in Superior Court in Carolina, Puerto Rico. Pursuant to U.S.S.G. § 4A1.1(c), this conviction warrants one criminal history point.

The Defendant has a total criminal history score of one. According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of one establishes a criminal history category of I.

Based on a total offense level of 36 and a Criminal History Category of I, the guideline range of imprisonment is 188-235 months.

The statutory and guideline range for a term of supervised release is at least five years. 21 U.S.C. §§ 841(b)(1)(A) & 846.

The Defendant is ineligible for probation because the offense is a Class A Felony. 18 U.S.C. § 3561(a)(1); U.S.S.G. § 5B1.1(b)(1).

The fine range for this offense is $20,000 to $10,000,000. 21 U.S.C. § 841(b)(1)(A); U.S.S.G. § 5E1.2(c)(4). In determining whether to impose a fine and the amount of such a

fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. 18 U.S.C. § 3572(a)(6); U.S.S.G. § 5E1.2(d)(7). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated May 17, 2013, provides a daily cost of $80.25, a monthly cost of $2,440.97, and an annual cost of $29,261.62 for imprisonment.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is

13

determined that a Guidelines sentence is warranted in the instant case.

**The Sentence**

For the instant offense, Esparra shall be sentenced to a term of 188 months' imprisonment to be followed by five years' supervised release.

As mandatory conditions of his supervised release, the Defendant shall:

(1) Not commit another federal, state or local crime;

(2) Not illegally possess a controlled substance;

(3) Not possess a firearm or destructive device;

(4) Refrain from any unlawful use of a controlled substance. The Defendant shall submit to one drug testing within fifteen days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer;

(5) Cooperate in the collection of DNA as directed by the probation officer.

The standard conditions of supervision (1-13) are recommended with the following special conditions: the Defendant shall be tested periodically at the direction of the Department of

14

Probation for substance abuse, and should he test positive, he shall participate in a substance abuse prevention program, be it residential or nonresidential, as directed by the Department of Probation.  The Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found.  The search must be conducted at a reasonable time and in reasonable manner.  Failure to submit to a search may be grounds for revocation.  The Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

The Defendant is to report to the nearest Probation Office within 72 hours of release from custody.  The Defendant is to be supervised by the district of residence.

It is further ordered that the Defendant shall pay to the United States a special assessment of $100, which shall be due immediately.

Defendant does not have the ability to pay a fine and so the fine in this case is waived.

The Defendant is ineligible for voluntary surrender.   18 U.S.C. §§ 3142(f)(1) & 3143(a)(2).


It is so ordered.


New York, NY
October 24, 2014

_____
ROBERT W. SWEET
U.S.D.J.